IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| JAMES EARL LINDSEY, ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| v. ) | CIVIL ACTION |
| ) | No. 07-3067-KHV |
| SCOTT BOWLIN, M.D., ) | |
| ) | |
| **Defendant.** ) | |
| _____) | |

**MEMORANDUM AND ORDER**

James Earl Lindsey brings suit pro se against Scott Bowlin, M.D., for violation of constitutional rights under the Fifth, Eighth and Fourteenth Amendments to the United States Constitution. Plaintiff's claims arise from his incarceration in Leavenworth Detention Center, a private prison run by the Corrections Corporation of America ("CCA").[1] Specifically, plaintiff claims that during said incarceration, defendant, a physician for CCA, concealed and/or failed to take reasonable steps to prevent the spread of methicillin-resistant Staphylococcus aureus ("MRSA") and Hepatitis C within the prison population, and failed to treat plaintiff for said diseases. This matter comes before the Court on defendant's Motion To Dismiss (Doc. #34) filed March 21, 2007.[2] Defendant asserts that plaintiff cannot bring an action for constitutional violations under Bivens v.

---

[1] CCA is a private Maryland corporation which houses and detains federal pretrial detainees and prisoners under contract with the United States Marshal's Service. See Peoples v. CCA Det. Ctr., 03-3129-KHV, 2004 WL 74317, at *1 (Jan. 15, 2004) ("Peoples I"), rev'd en banc, Peoples v. CCA Det. Ctrs. ("Peoples IV"), 449 F.3d 1097 (10th Cir.), cert. denied, 127 S. Ct. 664 (2006).

[2] Because defendant has already filed an answer, it should normally make its motion under Rule 12(c), for judgment on the pleadings. See Jacobsen v. Deseret Book Co., 287 F.3d 936, 941 n.2 (10th Cir. 2002). The same standard applies for both 12(b)(6) and 12(c) motions, however, so in keeping with defendant's designation, the Court refers to the motion as a 12(b)(6) motion to dismiss. See id.

Six Unknown Named Agents of Fed. Bureau of Narcotics, 403 U.S. 388 (1971), against an employee of a privately operated prison. For reasons stated below, the Court overrules defendant's motion.

## **Legal Standards**

In ruling on a motion to dismiss for failure to state a claim under Rule 12(b)(6), Fed. R. Civ. P., the Court assumes as true all well pleaded facts in the complaint and views them in a light most favorable to plaintiff. See Zinermon v. Burch, 494 U.S. 113, 118 (1990); Swanson v. Bixler, 750 F.2d 810, 813 (10th Cir. 1984). Rule 12(b)(6) does not require detailed factual allegations, but the complaint must set forth the grounds of plaintiff's entitlement to relief through more than labels, conclusions and a formulaic recitation of the elements of a cause of action. See Bell Atl. Corp. v. Twombly, __ U.S. __, 127 S. Ct. 1955, 1964-65 (2007). In other words, plaintiff must allege facts sufficient to state a claim which is plausible – rather than merely conceivable – on its face. See id. Plaintiff bears the burden to frame a "complaint with enough factual matter (taken as true) to suggest" that he is entitled to relief. Id. at 1965. The Court makes all reasonable inferences in favor of plaintiff. See Zinermon, 494 U.S. at 118; see also Rule 8(a), Fed. R. Civ. P.; Lafoy v. HMO Colo., 988 F.2d 97, 98 (10th Cir. 1993). The Court, however, need not accept as true those allegations which state only legal conclusions. See Hall v. Bellmon, 935 F.2d 1106, 1110 (10th Cir. 1991). In reviewing the sufficiency of plaintiff's complaint, the issue is not whether plaintiff will prevail, but whether he is entitled to offer evidence to support his claims. See Scheuer v. Rhodes, 416 U.S. 232, 236 (1974), overruled on other grounds by Harlow v. Fitzgerald, 457 U.S. 800 (1982). Although plaintiff need not precisely state each element of his claims, he must plead minimal factual allegations on those material elements which he must prove. See Hall, 935 F.2d at 1110. Because plaintiff proceeds pro se, the Court construes his complaint liberally and holds it to

a less stringent standard than formal pleadings drafted by lawyers. See id. The Court, however, does not assume the role of advocate for a pro se litigant. See id.

## Facts

Plaintiff alleges the following facts, which the Court accepts as true for purposes of ruling on defendant's motion:

Plaintiff is an inmate at Federal Correctional Institute in Talladega, Alabama. Complaint (Doc. #1) filed March 13, 2007 at 1.[3] From November of 2004 to February 16, 2005, plaintiff was incarcerated in Leavenworth Detention Center ("LDC"), a private prison run by CCA.[4] Id. at 1-3. Defendant is a physician who works for CCA. Id. at 1.

On November 29, 2004, defendant examined plaintiff regarding nausea, fever and an extremely painful bump on his right upper scrotum. Id. at 2. Defendant advised that plaintiff had an ingrown hair, prescribed Doxycycline and asked him to return in a week. Id. During the following week, plaintiff treated the wound himself without bandages or gauze. Id.

On December 6, 2004, medical staff performed a culture of plaintiff's wound. Id. Plaintiff told the doctor that he had never seen a two-inch bump for an ingrown hair which caused nausea and fever and drained so much pus.[5] Id. The doctor assured him that it was only an ingrown hair. Id. During that time and before, plaintiff knew several inmates who had similar abscesses on different parts of their bodies. Id. CCA medical staff told those inmates that the abscesses were caused by

---

[3] The complaint contains inconsistent page numbering. For purposes of this order, the Court refers to page numbers designated by the electronic court filing system.

[4] The complaint does not allege when plaintiff began his incarceration at LDC, but it appears that he was incarcerated there from at least November of 2004.

[5] Plaintiff does not specify whether he saw defendant or another doctor at this time.

spider or insect bites.  Id.

On December 15, 2004, CCA medical staff received culture results which showed that plaintiff's wound was not an ingrown hair, but MRSA, a potentially deadly disease which requires special medication.[6]  Id. at 4.  Defendant later saw plaintiff on two occasions but did not inform him that he had MRSA or attempt to treat him for MRSA.  Id.  Defendant did not educate plaintiff that MRSA has a rapidly poisoning effect when absorbed in the bloodstream and that plaintiff should seek immediate medical attention in event of recurrence.  Id.  Because defendant did not treat plaintiff for MRSA, plaintiff continued as an asymptomatic carrier and suffered at least five outbreaks of the disease.  Id. at 2, 4.  As a result, plaintiff was subjected to a substantial risk of serious harm from associated infections, such as urinary tract infections, in which plaintiff suffered bloodstream infections, vital organ failure, pneumonia and liver damage.  Id. at 4.

On January 7, 2005, medical staff informed plaintiff that he had Hepatitis C.  Id. at 3.  During the prior 19 months, plaintiff had multiple blood tests performed and was never told that he had Hepatitis C.[7]  Id.  Plaintiff only could have contracted Hepatitis C from barber equipment and weightlifting equipment which were used by inmates with suspected insect and spider bites who had Hepatitis C.  Id.  Defendant did not treat plaintiff for Hepatitis C.  As a result, plaintiff has suffered irreparable liver injury and has a shorter life expectancy and a substantial probability of sudden death.  Id. at 5.  Also, he cannot reproduce and must abstain from sexual intercourse.  Id.

---

[6]  The complaint alleges that medical staff learned the culture results on December 5, 2004 (one day before the culture was allegedly taken) and on December 15, 2004.  See Complaint (Doc. #1) at 2-3.  The Court uses December 15 because it fits with the alleged chronology of events.  The exact date on which staff learned the results, however, is immaterial to the Court's decision.

[7]  On July 23, 2004, plaintiff was medically cleared to work in the kitchen at CCA.  Id. at 5.

On February 16, 2005, plaintiff left CCA. Id. at 3. At that time, plaintiff believed that the bump on his scrotum was an ingrown hair. Id. Plaintiff did not know that he had MRSA. Id.

In March of 2005, while in the transfer center in Oklahoma, plaintiff noticed an abscess on his right knee. Id. Plaintiff initially ignored it, thinking that it was another ingrown hair. Id. Plaintiff eventually sought medical attention, however, due to swelling and excruciating pain. Id. A culture revealed that it was MRSA. Id.

Before plaintiff contracted MRSA, defendant knowingly concealed that a MRSA epidemic and outbreak was occurring throughout the LDC inmate population. Id. at 5. As plaintiff's healthcare provider, defendant had a duty to conform to a required standard of care to assure plaintiff's health and safety. Id. Defendant breached that duty by concealing the outbreak. Id. Defendant could have prevented continuous transmission of MRSA by implementing precautionary measures such as isolating infected inmates and/or posting warnings regarding the transmission, risk factors, prevention and treatment of MRSA. Id. Defendant should have warned inmates regarding disinfection and decontamination of potentially contaminated surfaces, materials and clothing. Id. Such measures would have given plaintiff a full and fair opportunity to minimize or avoid chances of contracting the disease. Id. Because defendant did not exercise reasonable care to stop MRSA from spreading within the inmate population, plaintiff contracted the disease and suffered continuous infections which caused excruciating pain and shameful and embarrassing scars on his scrotum, buttocks, rectum, back and thighs. Id.

Defendant knew that many inmates at LDC carried both MRSA and Hepatitis C. Defendant should have foreseen the danger of placing infected inmates among non-infected inmates. Id. Specifically, defendant should have anticipated that any discharge, pus or blood from the infected

inmates contained both MRSA and Hepatitis C and would simultaneously infect non-infected inmates with both diseases. Id. Defendant failed to exercise reasonable care to stop Hepatitis C and MRSA from spreading within the inmate population and proximately caused plaintiff to become infected with both diseases. Id.

## Analysis

Plaintiff claims that defendant violated his constitutional rights to due process and to be free of cruel and unusual punishment by (1) concealing and/or failing to prevent the spread of MRSA and Hepatitis C among the inmate population; and (2) failing to treat plaintiff for both diseases. Defendant seeks to dismiss, arguing that plaintiff cannot bring a Bivens action against an employee of a privately operated prison.

In Peoples v. CCA Detention Center ("Peoples I"), 2004 WL 74317, No. 03-3129-KHV (Jan. 15, 2004), this Court predicted that the Supreme Court would not imply a Bivens claim against individual CCA employees where plaintiff has a negligence remedy available under state law. See id. at **6-7.[8] On appeal, a Tenth Circuit panel majority agreed, finding that where plaintiff has alternate state or federal causes of action for damages, he does not have an implied right of action under Bivens for constitutional claims against employees of a privately operated prison. See Peoples

---

[8] In Peoples I, this Court concluded that it lacked subject matter jurisdiction over such claims. See id. at *7. In a related case, another judge of this Court found that it had subject matter jurisdiction, but that plaintiff did not state a claim upon which relief could be granted. See Peoples v. Corr. Corp. of Am. ("Peoples II"), 2004 WL 2278667, 02-3298-CM (March 26, 2004). In dicta, that case noted that it was unlikely that plaintiff could maintain a Bivens case against individual CCA employees, especially when alternative state remedies were available, but it did not decide the issue. Instead, it assumed the availability of a Bivens action and held that plaintiff had not alleged sufficient facts to support his due process claims. See id. at ** 4-7.

6

v. CCA Det. Ctrs. ("Peoples III), 422 F.3d 1090, 1096-1101 (10th Cir. 2005).[9]  On rehearing en banc, however, the Tenth Circuit equally divided on whether to extend Bivens to actions against employees of a privately operated prison.  See Peoples v. CCA Det. Ctrs. ("Peoples IV), 449 F.3d 1097, 1099 (10th Cir. 2006).[10]  On this issue, the en banc court vacated the panel opinion and remanded Peoples I for further proceedings.  On remand of Peoples I, this Court issued an order to show cause why it should not dismiss the case for failure to state a claim under Rule 12(b)(6).  See Order To Show Cause (Doc. #41) filed October 5, 2006 in Case No. 03-3129.  Plaintiff did not respond and the Court dismissed the case.  See Order (Doc. #42) filed October 30, 2006 in Case No. 03-3129.  Plaintiff did not appeal.

Although the Tenth Circuit has not resolved the issue, two circuit courts have declined to extend Bivens liability to individual employees of a privately operated prison where state law provides alternate remedies for the inmate's alleged injuries.  See Alba v. Montford, 517 F.3d 1249, 1254-55 (11th Cir. 2008); Holly v. Scott, 434 F.3d 287, 295-97 (4th Cir.), cert. denied, 547 U.S. 1168 (2006).[11]  In both cases, the courts of appeal concluded that where plaintiff has alternative state or federal remedies available, the Supreme Court would not extend Bivens liability to employees of a privately operated prison.  See Alba, 517 F.3d at 1252-54; Holly, 295-96.  This Court agrees. On three occasions from 1971 to 1980, the Supreme Court has recognized an implied cause of action

---

[9]  The panel majority concluded that federal courts have jurisdiction over such claims, but that plaintiff did not state a claim on which relief could be granted.  See id. at 1101.

[10]  The en banc court unanimously agreed that district courts have subject matter jurisdiction over such claims.  See id.

[11]  In Holly, the Fourth Circuit also found that it would not imply a Bivens action because defendants' actions were not fairly attributable to the federal government.  See id., 434 F.3d at 291-94.

for money damages arising directly under the Constitution.  See Bivens, 403 U.S. 388 (implied action against federal officials in individual capacities for Fourth Amendment violation); Davis v. Passman, 442 U.S. 228 (1979) (implied action against federal official for Fifth Amendment violation); Carlson v. Green, 446 U.S. 14 (1980) (implied action against federal prison officials for Eighth Amendment violation).  Since 1980, however, the Supreme Court has refused to recognize a new cause of action for money damages arising directly from the Constitution.  See Peoples III, 422 F.3d at 1098.

In Correctional Services Corporation v. Malesko, 534 U.S. 61 (2001), the Supreme Court underscored its hesitation to imply a Bivens cause of action in a new circumstance.  In Malesko, a federal offender sued Correctional Services Corporation ("CSC"), a private corporation which operated a halfway house under contract with the Bureau of Prisons, for Eighth Amendment violations.  The Supreme Court refused to extend Bivens to claims against private entities.  See Id. at 66.[12]  In so holding, the Supreme Court noted that it has consistently refused to extend Bivens except "to provide an otherwise nonexistent cause of action against *individual officers* alleged to have acted unconstitutionally, or to provide a cause of action for a plaintiff who lacked *any alternative remedy* for harms caused by an individual officer's unconstitutional conduct."  See id. at 70 (emphasis in original).  The Supreme Court emphasized the fact that plaintiff had alternative remedies available and found that the Supreme Court's three decade-long caution toward extending Bivens in any new context foreclosed an extension in that case.  See id. at 72-74.

Under Malesko, Albo and Holly, and for reasons stated in the Peoples III majority opinion,

---

[12]  Malesko did not address whether plaintiff could bring a Bivens claim against an individual employee of CSC.

this Court finds that a federal prisoner has no implied right of damages against an employee of a privately operated prison when state or federal law affords an alternate cause of action for the alleged injury.  See Peoples III, 422 F.3d at 1096-1103.  Thus, to determine whether plaintiff has stated a claim upon which relief may be granted, the Court must determine whether state law provides an alternative remedy for plaintiff's alleged injuries.[13]  See id. at 1103-08.

Defendant asserts that plaintiff has a state law negligence action available, see Memorandum In Support Of Motion To Dismiss (Doc. #35) filed March 21, 2008 at 4, but cites no law or analysis to support his conclusion.   Because defendant has not shown that plaintiff has alternate state law causes of action available for his alleged injuries, the Court will not dismiss plaintiff's claims at this time.[14]

---

[13]  The Court notes that if plaintiff does not state a claim for violation of his constitutional rights, he could not proceed under Bivens and it would be immaterial whether state law affords an alternate remedy.  Defendant's motion does not address whether plaintiff has sufficiently stated a claim for constitutional deprivation.  At first glance, it appears that plaintiff may state a claim for violation of the Eighth Amendment.  See, e.g., Helling v. McKinney, 509 U.S. 25, 33 (1993) (Eighth Amendment prohibits prison officials from deliberate indifference to inmate's serious medical needs or exposure to serious, communicable diseases); but see Estelle v. Gamble, 429 U.S. 97, 105-06 (1976) (allegations of negligence insufficient to state claim under Eighth Amendment).  The Court expresses no opinion whether plaintiff states a claim for violation of the Fifth and Fourteenth Amendments.

[14]  Plaintiff asserts that in addition to Bivens, his claims arise under 42 U.S.C. § 1983. Specifically, plaintiff asserts that because the State of Kansas licensed defendant to practice medicine, defendant constitutes a state actor for purposes of Section 1983.  See Response To Defendant's Motion To Dismiss (Doc. #37) filed April 7, 2008 at 3-4. Under Section 1983, a private individual's conduct constitutes state action only if it is "fairly attributable" to the state.  See Pino v. Higgs, 75 F.3d 1461, 1465 (10th Cir. 1996) (quoting Lugar v. Edmondson Oil Co., 457 U.S. 922, 937 (1982).  Conduct is "fairly attributable" to the state if (1) the deprivation is caused by the exercise of some right or privilege created by the state or by a rule of conduct imposed by the state; and (2) the private party acted together with or obtained significant aid from state officials or engaged in conduct otherwise chargeable to the state.  See id.  Here, plaintiff does not allege that state rules of conduct created the deprivation or that defendant acted in concert with state officials or engaged in conduct otherwise chargeable to the state.  Accordingly, his allegations do not state

(continued...)

**IT IS THEREFORE ORDERED** that defendant's Motion To Dismiss (Doc. #34) filed March 21, 2007 be and hereby is **OVERRULED.**

Dated this 6th day of May, 2008 at Kansas City, Kansas.

s/ Kathryn H. Vratil  
Kathryn H. Vratil  
United States District Judge

---

[14](...continued)
a claim for relief under Section 1983. Cf. Comiskey v. JFTJ Corp., 989 F.2d 1007, 1010-11 (8th Cir. 1993) (bar not state actor merely because state issued it liquor license); Tunca v. Lutheran Gen. Hosp., 844 F.2d 411, 413 (7th Cir. 1988) (hospital not state actor merely because regulated by state); Willis v. Carroll Township., No. 1:07-CV-0949, 2008 WL 644762, at *5 (MD. Pa. March 5, 2008) (attorney not state actor merely because licensed by state).