## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

JAMES EARL LINDSEY,

        *Plaintiff*,

vs.

        Case No. 07-3067-EFM

CORRECTIONS CORPORATION OF
AMERICA, JOHN DOE 1-5, in their official
and individual capacities, and SCOTT
BOWLIN, D.O., in his individual and official
capacity,

        *Defendants*.

## MEMORANDUM AND ORDER

From March 2003 to February 16, 2005, Plaintiff James Earl Lindsey was an inmate in the
Leavenworth Detention Center, a private prison operated by Defendant Correctional Corporation
of America (CCA).[1]  While an inmate under CCA's supervision, Lindsey claims to have been
exposed to, and ultimately contracted, Hepatitis C and methicillin-resistant staphylococcus auereus
(MRSA), a staphylococcus infection resistant to certain types of antibodies.  Lindsey subsequently
filed suit against Defendant Scott Bowlin, D.O., and later amended his complaint to include
Defendants CCA and John Doe 1-5.  Defendants CCA and John Doe 1-5 now move to dismiss

---

[1]Plaintiff James Earl Lindsey is currently an inmate at the Federal Correctional Institute in Talladega,
Alabama.

-1-

Lindsey's claims,[2] and Defendant Bowlin moves for Judgment on the Pleadings.[3]  For the following

reasons, the Court grants both motions.

## I.  Background

On November 29, 2004, Lindsey was examined by Dr.  Bowlin within the CCA facility after

complaining of excruciating pain from a large bump that had developed on the right upper-portion

of his scrotum.  At the same time, Lindsey was experiencing nausea, fever, and an elevated blood

pressure.  After examining Lindsey, Dr. Bowlin informed him that the bump on his scrotum resulted

from an in-grown hair.

In the week following this initial examination by Dr. Bowlin, a culture was taken from the

bump on Lindsey's scrotum for laboratory testing.  The test returned positive for MRSA, after which

neither Dr. Bowlin nor any member of CCA's medical staff informed Lindsey of the test result or

provided him with medication and treatment options for eradicating the MRSA infection during a

subsequent visit.  Shortly thereafter, on January 7, 2005, CCA's medical staff, whom Lindsey

identifies as Defendants John Doe 1-5, informed him that he had tested positive for hepatitis C.[4]

During the nineteen months prior to receiving this notice, Lindsey received other blood tests and was

not informed that any of the previous results returned positive for hepititis C.  Lindsey contends that

he could only have contracted hepititis C from prison barber and weightlifting equipment that was

used by other infected inmates.  Lindsey also claims the defendants failed to treat him for this

---

[2]Doc. 55.

[3]Doc. 58.

[4]Hepatitis C is a liver disease that has the potential of causing long-term infectings, chronic liver disease, cirrhosis, and potentially, death.

disease, and as a result, has suffered irreparable liver damage, has a shorter life expectancy, cannot reproduce, and must abstain from sexual intercourse.

In March 2005, Lindsey developed a wound on his right knee that was similar in appearance to the wound he previously had on his scrotum. Although Lindsey did not immediately seek medical attention for the wound, he eventually contacted medical staff while at a transfer center in Oklahoma.

Lindsey filed suit on March 13, 2007, identifying Dr. Bowlin as the only defendant. In his Complaint, Lindsey alleged that Dr. Bowlin violated his Fifth, Eighth, and Fourteenth Amendment rights by: (1) acting with indifference to his medical condition; (2) failing to take appropriate action to treat his infection; (3) failing to inform him of his medical condition; and (4) failing to take precautionary measures to protect him and others from MRSA and hepatitis C, making Dr. Bowlin the "substantial source and proximate cause of continuous infections."[5] Lindsey filed an Amended Complaint nineteen months later on October 31, 2008, in which he named CCA, and John Doe 1-5 in their individual and official capacities, as additional defendants, alleging substantially the same violations of his Constitutional rights, along with two claims of common law negligence and one claim of common law outrageous conduct causing severe emotional distress.[6]

In lieu of filing an Answer to Lindsey's Amended Complaint, Defendants CCA and John Doe 1-5 move to dismiss Lindsey's claims for: (1) failing to obtain leave of the Court prior to amending his Complaint; (2) failing to provide service of process pursuant to Fed. R. Civ. P. 4(b)

---

[5]Doc. 1.

[6]Lindsey acknowledges that he is asserting his Constitutional rights claims under *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388 (1971), allowing jurisdiction for these claims pursuant to 28 U.S.C. §§ 1331 and 1343.

and K.S.A. § 60-304(a); and (3) failing to bring his claims prior to the expiration of the statute of limitations.[7]  Dr. Bowlin moves for Judgment on the Pleadings, arguing that because Lindsey has an alternative state law cause of action for his injuries, he is precluded from bringing his claims under *Bivens*.  We will address each in turn.

### III.  Analysis

### *1. Motion to Dismiss by Defendants CCA and John Doe 1-5*

#### *a.  Plaintiff's failure to obtain leave of the Court prior to amending his Complaint*

Defendants CCA and John Doe 1-5 suggest that because Lindsey failed to obtain leave of the Court prior to filing his Amended Complaint, the Court should dismiss all claims against them. Defendants' assertion, however, is without merit.  The Court granted Lindsey leave to amend his complaint as indicated in the Court's September 9, 2008 Amended Scheduling Order.[8]  This Order set October 31, 2008 as the deadline for his amendment.  Thus, Lindsey's Amended Complaint was filed with leave of the Court.

#### *b.  Service of process pursuant to Fed. R. Civ. P. 4 and K.S.A. § 60-304(a)*

Defendants John Doe 1-5 also argue for dismissal because Lindsey has failed to serve any of Defendants John Doe 1-5 in person, at their residence, or through an authorized agent. Defendants argue that because none of these unknown defendants have been individually served, Lindsey has failed to comply with Fed. R. Civ. P. 4 and K.S.A. § 60-304(a).  Further, Defendants assert that CCA is not an agent for any of Defendants John Doe 1-5, and as a result, cannot accept

---

[7]Defendant Bowlin does not join Defendants CCA and John Doe 1-5's Motion to Dismiss.

[8]Doc. 48, p. 2.

service of process on their behalf.  Because these defendants remain unknown and have not been served, dismissal of the claims against them is warranted.

Lindsey counters by citing to Fed. R. Civ. P. 4(m), arguing that he has 120 days after filing his Complaint to properly serve these defendants.  Accordingly, Lindsey contends that he has until February 28, 2009 in which to serve the unnamed defendants, and therefore, Defendants' argument is premature.[9]

A plaintiff is responsible for serving both a summons and a complaint on all named defendants within 120 days after the Complaint is filed.[10]  Absent good cause for failure to serve a defendant within that time period, the Court must dismiss the action against the un-served defendant without prejudice.[11]  "When [a] defendant challenges the sufficiency of service of process, the burden of proof is on the plaintiff to show the adequacy of service."[12]  A plaintiff's decision to proceed *pro se* does not relieve him of the responsibility to comply with Fed. R. Civ. P. 4.[13]

Here, the Court has reviewed the record and concludes that none of the John Doe 1-5 defendants have either been identified or served within 120 days of Lindsey's Amended Complaint. It is a plaintiff's responsibility to serve a defendant within 120 days after a complaint is filed.[14] Moreover, Lindsey has failed to even serve any of the unknown defendants as of the date of this

---

[9]The Court recognizes that at the time Lindsey filed his Response to Defendants' motion, his time for serving the unknown defendants had not yet run.

[10]Fed. R. Civ. P. 4(b), (m).

[11]*Id.*

[12]*Queen v. Feden*, 2005 WL 1941693, at *18 (D. Kan. Aug. 12, 2005) (quoting *Blue Ocean Lines v. Universal Process Equip., Inc.*, 1993 WL 403961, at *4 (S.D.N.Y. Oct. 7, 1993)).

[13]*Dicesare v. Stuart*, 12 F.3d 973, 980 (10th Cir. 1993).

[14]*See* Fed. R. Civ. P. 4(m).

Order, which, is six months after Lindsey's 120 day deadline. As a result, Lindsey's claims against Defendants John Doe 1-5 are dismissed.

### c. *Claims barred by Statute of Limitations*

Defendants CCA and John Doe 1-5 assert that Lindsey failed to bring his claims against them within the relevant statute of limitations period, and therefore, all claims alleged against them should be dismissed. Defendants argue that Lindsey's *Bivens* claims and his state law claims are subject to the statute of limitations period for a personal injury action in the state where the cause of action accrued, which in this case, is Kansas. Defendants assert that in Kansas, a plaintiff claiming personal injury has two years from the time the fact of injury becomes known to the plaintiff to submit a claim,[15] and suggests that the two-year limitation applies to all claims alleged by Lindsey.

CCA argues that by Lindsey's own admission, he became aware that he tested positive for hepatitis C on January 7, 2005. As a result, the limitations period began to run on that date, thereby barring any personal injury claim brought after January 7, 2007. CCA further argues that in March 2005, Lindsey developed a wound on his knee, and by his own volition, did not seek immediate medical attention. CCA contends that it cannot be responsible for Lindsey's failure to seek medical attention so as to delay the start of the limitations period, arguing that at that time, Lindsey knew or should have known of the injury and cause of it. Accordingly, CCA asserts that any personal injury claim arising from Lindsey's MRSA infection brought after March 2007 is barred.

While Lindsey agrees that his claims are governed by the two-year statute of limitations period, he disputes CCA's contention concerning when the limitations period began to run. Lindsey admits that on January 7, 2005 he became aware that he had tested positive for hepatitis C; however,

---

[15]*See* K.S.A. 60-513(a)(4).

he did not become aware of the cause of this injury until some time later. Lindsey asserts that because he was unaware that his injury was caused by CCA's and John Doe 1-5's negligence at the time he became aware of his hepatitis C infection or the time he later developed the knee wound, the limitations period did not begin to run. Lindsey further contends that because the face of his Complaint does not establish that he was both aware of the injury and the cause of injury before March 13, 2005, the time in which he ascertained the cause of his injury so as to begin running the state of limitations is a question for a jury, and therefore, CCA's motion should be denied.

While Kansas law generally imposes a two-year statute of limitations for personal injury actions, the cause of action is not deemed to have accrued until the fact of injury becomes "reasonably ascertainable to the injured party."[16] The "'fact of injury' refers to the point in time when plaintiff knew or should have known he had an injury caused by defendant's acts or omissions."[17] In this case, the relevant question is when Lindsey knew or should have known that CCA's acts or omissions were the cause of his injury.

Here, Lindsey admits that he became aware that he was infected with hepatitis C on January 7, 2005.[18] He further acknowledges that prior to his hepatitis C diagnosis, he did not engage in any intravenous-drug usage, homosexual acts, or the sharing of personal items potentially exposed to contaminated blood so as to contract the disease.[19] He suggests that because he has had numerous blood tests performed prior to this diagnosis within the prison that returned negative results, he

---

[16]K.S.A. § 60-513(b)-(c).

[17]*Asselin v. Shawnee Mission Med. Ctr., Inc.*, 903 F. Supp. 1454, 1457 (D. Kan. 1995) (citing *Gilger v. Lee Constr., Inc.*, 249 Kan. 307, 322, 820 P.2d 390, 401 (1991)).

[18]Doc 1, p.3; Doc. 50, p. 5.

[19]Doc. 1, p. 3; Doc. 50, p. 5.

contracted the disease from within CCA's facility.  Lindsey was also aware of several inmates in

CCA's facility that were infected with hepatitis C, had open wounds, and had access to the prison's

barber and weightlifting equipment and hygiene facilities.  Lindsey contends that these are the

potential sources for his contracting the disease.  As a result, Lindsey knew or should have known

as of January 7, 2005, based on the allegations in his Complaint and Amended Complaint, that he

contracted his hepatitis C infection from conditions within CCA's facility – conditions caused by

either the acts or omissions of CCA.  Therefore, we conclude that Lindsey's claims based on his

hepatitis C infection brought after January 7, 2007, against CCA are time barred.

Lindsey further asserts that he timely filed his claims with regard to his MRSA infection.

Lindsey became aware of a wound on his knee in March 2005, but claims that he was not aware of

his MRSA infection until a later date.  Lindsey filed his initial Complaint, naming Dr. Bowlin as the

sole defendant, on March 13, 2007.  While neither Lindsey or CCA provide the Court with an exact

date that Lindsey became aware of his MRSA infection,[20] we are able to conclude from the record

that Lindsey knew or should have known that his injury was caused by CCA's acts or omissions by

July 2005 at the latest, triggering the limitations period.[21]

Along with his Complaint, Lindsey provided the Court with the lab result from a culture

taken from his wound while at the Oklahoma City, Oklahoma, transfer center, and although the

document provided is practically illegible, it indicates the result was received on March 24, 2005,

and the location corresponds to Lindsey's statement in his Complaint regarding testing and being

---

[20]Lindsey alleged that in March 2005, while in an Oklahoma transfer center after leaving the CCA Leavenworth Detention Center, a culture was taken of his wound, after which the doctor at that location explained to him that he was infected with MRSA.  Doc. 1, p. 3.

[21]We need not determine a specific date that triggered the limitations period, as our conclusion that the limitations period was triggered in July 2005 is sufficient for purposes of ruling on the motion before the us.

informed that he was infected with MRSA.  While this in itself is not conclusive, it corroborates

Lindsey's statement that he received the test.  Lindsey acknowledged that upon receiving notice of

this test result confirming his infection, he became suspicious of the recent events at CCA's

Leavenworth facility.[22]  Lindsey "nevertheless retained that suspicion until arriving at Talladega,

AL. where he ordered his medical records and received them in July 2005."[23]  Moreover, receipt of

his medical records should have alerted him to the cause of his injury.  Thus, with respect to CCA,

Lindsey at this point knew or should have known of CCA's acts or omissions with regard to his

injury.[24]  Therefore, any claim brought against CCA related to Lindsey's MRSA infection after July

2007 is time barred.

Similarly, Lindsey's claims against Defendants John Doe 1-5 are time barred.  By Lindsey's

own admission, he received his medical records in July 2005.  At this point, he knew or should have

known that both his Hepatitis C and MRSA infections were the result of Defendants John Doe 1-5

acts or omissions, and as a result, any claim brought against them after July 2007 is also time barred.

### *Relation back*

Because the statute of limitations has run prior to Lindsey filing his Amended Complaint

adding CCA as a party, the Amended Complaint must relate back to the original Complaint to have

any effect with respect to CCA and his MRSA claims.  Relying on Fed. R. Civ. P. 15(c), Lindsey

argues in his Response that the amendment relates back to his original pleading because it was

---

[22]Doc. 1, p. 3.

[23]*Id.*

[24]Further supporting this Court's determination is Lindsey's laboratory report for a June 23, 2005 test on his wound conducted in Alabama, received by the Talladega Federal Correction facility on June 30, 2005, indicating a positive test for MRSA.  Doc. 1-2, p. 7.

timely filed and because both Complaints arise out of the same nucleus of operative facts.  Lindsey

further asserts that CCA was properly added in the Amended Complaint, and because Dr. Bowlin

was served at two different locations, with one being CCA's registered agent, it received notice of

the action and is not prejudiced in defending the case.  Lindsey contends that because CCA was

listed in the case caption of the Complaint,[25] and because the Complaint was served at CCA's

registered agent, it should have known that but for a *pro-se* plaintiff's mistake as to its identity, it

would have properly been listed in the original Complaint.  We disagree.

Rule 15(c)(1)(C) provides in pertinent part:

> An amendment to a pleading relates back to the date of the original pleading when
> . . . the amendment changes the party or the naming of the party against whom the
> claim is asserted, if Rule 15(c)(1)(B) is satisfied and if, within the period provided
> by Rule 4(m) for serving summons and complaint, the party to be brought in by
> amendment (i) received such notice of the action that it will not be prejudiced in
> defending on the merits; and (ii) knew or should have known that the action would
> have been brought against it, but for a *mistake* concerning the proper party's
> identity.[26]

The Tenth Circuit Court of Appeals has specifically held that "a plaintiff's lack of knowledge

of the intended defendant's identity is not a mistake concerning the identity of the proper party

within the meaning of [Rule 15(c)(1)(C)]."[27]  As explained by the appellate court, "the mistake

proviso [was included] . . . in order to resolve 'the problem of a misnamed defendant' and allow a

party 'to correct a formal defect such as a misnomer or misidentification.'"[28]

---

[25]The caption of the original Complaint listed the defendant as "Correction Corporation of America's
Physician, Scott Bowlin, in his personal, individual, official and professional capacity."  Doc. 1.

[26]Fed. R. Civ. P. 15(c)(1)(C) (emphasis added).

[27]*Garrett v. Fleming*, 362 F.3d 692, 696 (10th Cir. 2004).

[28]*Id.* (quoting *Wayne v. Jarvis*, 197 F.3d 1098, 1103-04 (11th Cir. 1999)) (quotations and alterations in
original).

Here, Lindsey is attempting to add a new party rather than to correct a mis-named or misidentified party, as is intended by the Rule. As a result, Lindsey's Amended Complaint does not relate back to his original pleading, and his claims asserted against CCA are, therefore, time barred.

Even if Lindsey's Amended Complaint was not time barred as just discussed, he has not demonstrated that CCA received notice of the prior suit. Contrary to Lindsey's assertion, his attempt to serve CCA through its designated agent, the Corporation Company, Inc., failed. Lindsey attempted to serve Dr. Bowlin through CCA's agent through process addressed to "Scott Bowlin, DO, Corrections Corporation of America, c/o The Corporation Company, Resident Agent."[29] The Corporation Company was served with this notice on October 12, 2007. However, The Corporation Company returned notice to the Clerk of the Court, dated October 12, 2007 and received by the Clerk's office on October 15, 2007, that it "is not the registered agent for an entity by the name of Scott Bowlin, DO," and returned the documents.[30] The Corporation Company also notified Lindsey, who in turn notified the Court that service had not occurred.[31] Subsequently, Dr. Bowlin was sent notice by mail, addressed to "Scott Bowlin, D.O., CCA-Leavenworth, 100 Highway Terrage, Leavenworth, KS 66048," which was delivered to that address on November 21, 2007.[32] There is nothing in the record demonstrating that CCA actually received any notice of the initial suit. As a result, Lindsey's Amended Complaint fails to relate back, mandating dismissal of his claims against CCA.

---

[29]Doc. 60-2, p. 2.

[30]Doc. 11.

[31]Doc. 12.

[32]Doc. 60-2, pp. 7-10.

As discussed previously in this opinion, the rules of service have not been satisfied concerning Defendants John Doe 1-5, and therefore, Lindsey's Amended Complaint fails to relate back with respect to these defendants, mandating dismissal of all claims against them.

### 2. Motion for Judgment on the Pleadings by Defendant Bowlin

Defendant Bowlin has moved for Judgment on the Pleadings, arguing that Lindsey has no claim under *Bivens* because state law provides an adequate alternative remedy for his injuries. Bowlin argues that the claims alleged by Lindsey involve Bowlin's concealment of Lindsey's MRSA infection or his failure to take reasonable steps to either treat Lindsey for the disease or to prevent the spread of MRSA, as well as hepatitis C, within the prison population. Bowlin contends that Lindsey is asserting medical negligence, a claim recognized under state law, thereby providing an alternative remedy for his alleged injuries.

Lindsey disagrees that the availability of a state law claim is dispositive of whether he may bring his *Bivens* claims. He asserts that *Bivens* was concerned with whether *Congress* provided a plaintiff a remedy, not the state. Here, he argues Congress has provided no alternative remedy, and accordingly, dismissal of his *Bivens* claims is inappropriate. Lindsey further asserts that even if the presence of a state law remedy is relevant, no adequate remedy exists, suggesting that a state medical malpractice action is far from being equivalent to or as equally effective as a constitutional cause of action, and he should be permitted to pursue his *Bivens* claims in federal court.

A motion for judgment on the pleadings under Fed. R. Civ. P. 12(c) is governed by the same standards as a motion to dismiss under Fed. R. Civ. P. 12(b)(6).[33] Under Rule 12(b)(6), the Court accepts as true all well-pleaded factual allegations in the complaint and draws all reasonable

---

[33]*See Atl. Richfield Co. v. Farm Credit Bank*, 226 F.3d 1138, 1160 (10th Cir. 2000); *Mock v. T .G. & Y.*, 971 F.2d 522, 528 (10th Cir. 1992).

inferences from those facts in favor of plaintiff.[34]  Rule 12(b)(6) does not require detailed factual allegations, but the complaint must set forth the grounds of plaintiff's entitlement to relief through more than labels, conclusions, and a formulaic recitation of the elements of a cause of action.[35]  In other words, a plaintiff must allege sufficient facts to state a claim which is plausible, rather than merely conceivable, on its face.[36]

On March 21, 2008, Bowlin filed a similar Motion to Dismiss, claiming that *Bivens* neither permitted a plaintiff to bring an action for constitutional violations against an employee of a privately operated prison, nor did it provide a cause of action where a plaintiff had an alternative state remedy.[37]  On June 6, 2008, the Court denied Bowlin's motion, stating that while he asserted that Lindsey had a state law negligence action available, he failed to cite to any law or provide any analysis in support of his conclusion.[38]  However, we agreed with the Fourth and Eleventh Circuit Court of Appeals that *Bivens*' is not applicable where an alternative state remedy is available, explaining:

> Although the Tenth Circuit has not resolved the issue, two circuit courts have declined to extend Bivens liability to individual employees of a privately operated prison where state law provides alternate remedies for the inmate's alleged injuries. *See Alba v. Montford*, 517 F.3d 1249, 1254-55 (11th Cir. 2008); *Holly v. Scott*, 434 F.3d 287, 295-97 (4th Cir. 2006), *cert. denied*, 547 U.S. 1168 (2006).  In both cases, the courts of appeal concluded that where plaintiff has alternative state or federal remedies available, the Supreme Court would not extend Bivens liability to

---

[34]*See Moore v. Guthrie*, 438 F.3d 1036, 1039 (10th Cir. 2006).

[35]*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see also Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991) (plaintiff need not precisely state each element, but must plead minimal factual allegations on those material elements that must be proved).

[36]*Bell Atl. Corp.*, 550 U.S. at 570.

[37]Doc. 34.

[38]*Lindsey v. Bowlin*, 557 F. Supp. 2d 1225 (D. Kan. 2008); *see also* Doc. 40.

-13-

employees of a privately operated prison.  *See Alba*, 517 F.3d at 1252-54; *Holly*, 434 F.3d at 295-96.[39]

In *Menteer v. Applebee, et al.*,[40] this Court was presented with the near identical issue now before us in Bowlin's motion.  In *Menteer*, the Court reviewed the relevant case law on the issue, and ultimately confirmed the reasoning of our July 6, 2008 opinion (*Lindsey*), along with finding the holdings of *Holly* and *Alba* persuasive.  Therefore, following the precedent of this district along with the similar holdings of the Fourth and Eleventh Circuits, we hold that Lindsey has no implied right of damages against Bowlin when state or federal law provides an alternate cause for his alleged injury.

We next determine whether Lindsey has an alternate state law remedy available to redress his alleged injuries.  In disputing Bowlin's assertion that Kansas law provides Lindsey with a medical negligence cause of action, Lindsey argues that such an action is potentially ineffective to enforce his constitutional rights.  He contends that his state law negligence claim is simply an alternate remedy, and does not foreclose his ability to bring a claim under *Bivens*.  We disagree.

Here, as with the plaintiff in *Menteer*, Lindsey relies on *Carlson v. Green*[41] to argue his *Bivens* claims are not precluded by an alternative state remedy.  In *Carlson*, the Supreme Court held that a federal prisoner could bring a *Bivens* claim notwithstanding the fact that the prisoner had another remedy available.[42]  As pointed out in *Menteer*, however, the Tenth Circuit noted that the "Supreme 'Court in *Carlson* did not address the specific question of whether a potential state law

---

[39]*Lindsey*, 557 F. Supp. 2d at 1229.

[40]2008 WL 2649504 (D. Kan. June 27, 2008).

[41]446 U.S. 14 (1980).

[42]*Id.* at 18.

cause of action against an[ ] individual will preclude an implied *Bivens* claim, '"[43] but instead, inferred a cause of action against an individual employee when the only alternative remedy was against the United States under federal law.[44]  As a result, the Tenth Circuit turned to the Supreme Court's later holding in *Correctional Services Corp. v. Melesko*,[45] where it reasoned that a "threat of suit against the United States was insufficient to deter the unconstitutional acts of individuals," and extending *Bivens* in *Carlson* "provide[d] an otherwise nonexistent cause of action against individual officers.'"[46]  From this holding, the appellate court held "that the presence of an alternative cause of action against individual defendants provides sufficient redress such that a Bivens cause of action need not be implied."[47]  We find the Tenth Circuit's analysis persuasive.

In the instant case, Lindsey alleges that Bowlin owed him a duty to provide adequate medical care and to implement reasonable precautions to prevent the spread of disease, that Bowlin breached that duty, and as a result, caused his injuries.  These allegations sound in medical negligence, which is a state cause of action that would provide sufficient redress.  Accordingly, we find that Lindsey has an alternative state remedy so as to preclude extending *Bivens* liability to

---

[43]*Menteer*, 2008 WL 2649504, at *9 (quoting *Peoples v. CCA Detention Centers*, 442 F.3d 1090, 1102 (2005)) (alteration in original).

[44]*Peoples*, 442 F.3d at 1102. The Supreme Court reasoned that a "threat of suit against the United States was insufficient to deter the unconstitutional acts of individuals," and therefore, inferred a cause of action against the individual prison officials.  *Id.* (quoting *Correctional Services Corp. v. Melesko*, 534 U.S. 61, 70 (2001)).

[45]534 U.S. 61(2001).

[46]*Peoples*, 442 F.3d at 1102 (quoting .

[47]*Id.*  The Court is cognizant that the Tenth Circuit, during rehearing sitting *en banc* in *Peoples v. CCA Det. Ctrs.*, 449 F.3d 1097 (10th Cir. 2006), *cert denied*, 549 U.S. 1056 (2006), was equally divided as to whether to extend *Bivens* to employees of a privately operated prison, where it vacated its 2005 panel opinion holding, and therefore, lacks precedential value.

Bowlin.  We, therefore, grant Bowlin's motion, and dismiss Lindsey's claims brought pursuant to *Bivens* for failure to state a claim upon which relief can be granted.

This Court retains jurisdiction for Lindsey's remaining state law claims pursuant to 28 U.S.C. 1332.

Accordingly,

**IT IS THEREFORE ORDERED** that Defendants Corrections Corporation of America and John Doe 1-5's Motion to Dismiss (Doc. 55) is hereby GRANTED.

**IT IS FURTHER ORDERED** that Defendant Scott Bowlin, D.O.'s Motion for Judgment on the Pleadings with respect to Plaintiff's *Bivens* claims (Doc. 58) is hereby GRANTED.

**IT IS SO ORDERED.**

Dated this 25th day of August, 2009, in Wichita, Kansas.

/s Eric F. Melgren
ERIC F. MELGREN
UNITED STATES DISTRICT JUDGE